**McCARTER & ENGLISH, LLP**
Attorneys At Law
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
*Attorneys for Defendant*
  *Raytheon Company*

| | |
|---|---|
| RONALD S. SCEARCE AND ALISA J. SCEARCE,<br><br>             Plaintiffs,<br><br>v.<br><br>3M COMPANY F/K/A MINNESOTA MINING & MANUFACTURING CO., ET AL.<br><br>             Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>Civil Action No. _____<br><br>NOTICE OF REMOVAL AND COPIES OF ALL PROCESS AND PLEADINGS |

## RAYTHEON COMPANY'S NOTICE OF REMOVAL

**TO:** The United States District Court for the District of New Jersey, Newark Vicinage

**PLEASE TAKE NOTICE** that Defendant Raytheon Company ("Raytheon"), pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, hereby removes this action from the Superior Court of New Jersey, Law Division, Middlesex County, to the United States District Court for the District of New Jersey, Newark Vicinage.

### Introduction

This is an asbestos personal injury action. Plaintiffs allege that Plaintiff Ronald S. Scearce was exposed to various products containing asbestos, resulting in his contracting mesothelioma. Plaintiffs provided little information regarding the alleged exposure in their pleadings. However, in his recent deposition, Mr. Scearce identified the only Raytheon product that could conceivably fall within Plaintiffs' allegations – a troposcatter radio system known as

ME1 14263078v.1

the AN/TRC-170 produced by Raytheon under contract with the United States Air Force. Due to extensive government involvement with the product's design, manufacture, maintenance and repair, and production of technical and warning documents, including extensive, detailed, and precise specifications, this Court has federal officer jurisdiction of this action pursuant to 28 U.S.C. § 1442(a)(1). Raytheon's removal is timely under 28 U.S.C. § 1446(b)(3), based on the date of Plaintiff's deposition testimony.

As further grounds for removal, Raytheon states as follows.

### Complaint, Answer, and Plaintiff's Deposition

Plaintiffs filed their Complaint on or about July 3, 2012, and filed their First Amended Complaint (Complaint) (Ex. A) on or about July 19, 2012, in an action entitled *Ronald S. Scearce and Alisa J. Scearce v. 3M Company et al.*, No. MID-L-4657-12AS, Superior Court of New Jersey, Law Division, Middlesex County, New Jersey.

Plaintiffs alleged that Plaintiff Ronald S. Scearce contracted mesothelioma as a result of his exposure to asbestos-containing products, including communications equipment installed and used at Air Force base sites. (*See* Ex. A, ¶ 5). The Complaint provided virtually no information about alleged asbestos exposures. (*See id.*) The Complaint did not state Plaintiffs' claims against Raytheon in sufficient detail to inform Raytheon that the action was removable.

Raytheon filed its Answer to the Complaint on September 19, 2012 (Ex. B). Among other defenses, Raytheon asserted the government contractor defense. *See* Raytheon's Standard Answer, Twenty-Second Separate Defense.

Mr. Scearce was deposed on September 21, 24, and 25, 2012. Mr. Scearce testified that the only specific Raytheon product about which he complains is the AN/TRC-170, a digital

troposcatter radio system. (*See* Ex. C, Scearce Dep. 458:9-14; 461:21 - 462:3; 479:10-24.)[1] The AN/TRC-170 was designed and manufactured according to precise specifications set forth by the U.S. Air Force; Raytheon designed and manufactured this equipment, including warnings and instructions, under the direction of federal officers. Prior to Mr. Scearce's testimony, Raytheon had no information upon which it could determine that this case was removable. Raytheon's Notice of Removal is timely filed within thirty days of Mr. Scearce's testimony. *See* 28 U.S.C. § 1446(b)(3).

### Government Involvement with Raytheon Product

The process by which the AN/TRC-170 was designed and manufactured, and by which technical and warning documents were generated, is described by the Affidavit of Angelo Fergione, a Raytheon engineer who participated in all of the design, manufacture, and testing processes for the AN/TRC-170 (Ex. D). Mr. Fergione's Affidavit sets forth all requisite elements to establish federal officer jurisdiction. The contract between the Air Force and Raytheon is attached as an exhibit to Mr. Fergione's Affidavit. The Affidavit of Mr. Austin Wolfrey is also presented in support of this Petition for Removal (Ex. E). Mr. Wolfrey was a materials scientist/engineer who participated in determining what materials would be used in the AN/TRC-170. Mr. Wolfrey's testimony sets forth the rigorous process that Raytheon completed to assure that the components in the AN/TRC-170 complied with the detailed federal regulations applicable to the contract. Mr. Fergione and Mr. Wolfrey attest to the absence of asbestos in the AN/TRC-170.

**Government specifications.** The AN/TRC-170 was produced by Raytheon under contract with the United States Air Force. The government called out detailed, extensive, and

---

[1] Because of the recentness of Mr. Scearce's deposition, final transcripts are not yet available, and rough draft versions are thus provided.

3

precise design, performance, materials specifications, parts selection, safety, human factors, quality, maintenance considerations, and services provided for the AN/TRC-170, which had to be met to fulfill the contract. The specifications were so detailed that they included things like metal finishes, adhesives, nuts, and bolts. The specifications prohibited including asbestos components in the equipment. (Ex. D, Fergione Affidavit, ¶ 5, Ex. E, Wolfrey Affidavit, ¶¶ 4 and 5.) Mr. Fergione's Affidavit refers to the performance specifications for the AN/TRC-170, Specification No. TTB1-2203-0025A, 15 March 1976. That Specification is attached hereto as Exhibit F.

**General government supervision.** The government closely monitored every part of the design, manufacture, testing, and publications for the AN/TRC-170. At every stage of the process, Raytheon made presentations to the government about the progress of the program. The government commented and critiqued the progress, and the work could not proceed until the government was satisfied as to each issue. The government approved Raytheon's work at every stage. (Ex. D, Fergione Affidavit, ¶¶ 6, 8, 9.)

**Government design reviews.** The government required Raytheon to present extensive periodic design reviews. That process began with preliminary design review wherein the government raised questions and concerns. Raytheon addressed each of the issues identified by the government during the preliminary design review. The design process was completed after the government conducted a critical or final design review. The project did not progress to the manufacturing stage until all items identified by the government in the critical design review were addressed and approved by the Air Force. Warning labels were provided on the equipment and in the Technical Orders in accordance with applicable technical specifications, including the military specification for human factors. Any warning labels were reviewed and approved by the

government. The government conducted program management reviews every four months. (Ex. D, Fergione Affidavit, ¶¶ 8, 11.)

**Government manufacturing and testing reviews.** The government reviewed all procedures related to manufacturing of the AN/TRC-170 and testing of it. The government had quality assurance representatives who participated in all testing activities, and those individuals had to approve all test results. The contract required Raytheon to present the government with information about all development tests that were planned, and information about where and when tests would be conducted. Government representatives were required to verify all data obtained from testing and validate the test results. The government conducted additional testing to confirm compliance with the specifications. Each part that was incorporated into the AN/TRC-170 was identified by Raytheon materials engineers to comply with the government specifications. The government reviewed and approved the choice of all materials for each component. (Ex. D, Fergione Affidavit, ¶ 9, and Ex. E, Wolfrey Affidavit, ¶¶ 3 and 4.)

**Government maintenance and repair technical order reviews.** Raytheon developed Technical Orders that were published by the government that provided information concerning repair and maintenance. The contract required the creation of these Technical Orders, which the government reviewed and approved. Raytheon could not create warnings or instruction labels without specific government approval. (Ex. D, Fergione Affidavit, ¶¶ 10 and 11.)

**Government approval.** The government approved the AN/TRC-170; the Air Force would not have accepted delivery of the equipment unless every specification of the contract had been met. (Ex. D, Fergione Affidavit, ¶ 12.)

5

## Federal Officer Jurisdiction Removal Requirements

**Federal Officer Removal Statute**

Federal officer jurisdiction is provided by the Federal Officer Removal Statute (FORS), 28 U.S.C. § 1442, which states, as relevant here:

(a) A civil action . . . that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

   (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office. . . .

**Elements to Be Demonstrated Under Removal Statute**

Removal under the FORS is appropriate when the defendant demonstrates that:

(1) it is a "person" within the meaning of the statute;

(2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office;

(3) it raises a colorable federal defense; and

(4) there is a causal nexus between the claims and the conduct performed under color of a federal office.

*Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998); *see, e.g.*, *Lewis v. Asbestos Corp., Ltd.*, No. 10-650 FLW, 2012 WL 3240941, *4 (D.N.J. Aug. 7. 2012); *Crackau v. Lucent Technologies*, No. Civ. 03-1376 (DRD), 2003 WL 21665135, *2 (D.N.J. June 25, 2003).

*"Person" under removal statute*

A corporation is a "person" for purposes of the federal officer removal statute. *See, e.g.*, *Lewis*, 2012 WL 3240941, *4 ("Courts have consistently recognized that for the purposes of 1442(a)(1), a corporation qualifies as a person."); *accord Crackau*, 2003 WL 21665135, *2.

ME1 14263078v.1

### *"Acted under" a federal office*

To establish the second element, the removing party must demonstrate that it performed the complained-of activity at the direction of official federal authority. *Lewis*, 2012 WL 3240941, *4. "Specifically, a defendant must show that the action in question was done under the direct and detailed control of a federal officer." *Id.* The requisite control can be satisfied by a showing of strong government intervention. *Id. See id.* (in asbestos action, holding that production of turbines under U.S. Navy standards met the "acted under" requirement); *Crackau*, 2003 WL 21665135, *2 (in action premised on exposure to ionizing radiation from military radar devices, holding that production of radar devices under U.S. Army direction met requirement).

### *Colorable defense*

As to the third element, the defendant need not demonstrate that the federal defense is "ultimately . . . meritorious," but only that a "colorable claim" to the defense has been made. *E.g., Lewis*, 2012 WL 3240941, *5. Here, Raytheon has asserted the government contractor defense. The elements of the defense are: (1) the United States must have approved reasonably precise specifications, (2) the equipment conformed to those specifications; and (if warnings of a hazard are at issue) (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but unknown to the United States. *Lewis*, 2012 WL 3240941, *5 (citing *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988)).

The necessary showing for these requirements is similar to that under the "acted under federal officer authority" element above – that is, supervision and control by the government over the design and other facets of the product in question, and acceptance of the product by the government. *See Lewis*, 2012 WL 3240941, *5 (holding this element satisfied by Navy control over "almost every facet of its turbines" and superior knowledge by Navy of potential hazards);

ME1 14263078v.1

*Crackau*, 2003 WL 21665135, *3 (finding element met where defendant had entered into defense contracts and produced government-mandated products).

### *Causal nexus*

The final element is satisfied when the "complained-of action is closely related to direct federal control." *Lewis*, 2012 WL 3240941, *6 (finding causal connection existed between plaintiffs' allegations of lack of warning of asbestos hazard aboard naval vessel and defendant's assertion that Navy exercised complete control over warnings); *Crackau*, 2003 WL 21665135, *5 (finding requirement met where "Plaintiffs are attempting to hold Lucent liable for the very conduct directed by federal officers – Lucent's manufacture of the military products at issue, and in particular the emissions from the radar transmissions tubes").

### *No consent of Defendants required*

Raytheon is not required to obtain consent of any other defendant in order to remove Plaintiffs' action as a whole pursuant to 28 U.S.C. § 1442(a)(1) because the statute is jurisdictional in nature. *See Lewis*, 2012 WL 3240941,*6 (noting that although the Third Circuit has not yet addressed the issue, every federal appeals court that has considered the issue has determined that consent of all defendants is not required for federal officer jurisdiction removal).

### **Federal Officer Jurisdiction Removal Requirements Are Met Here**

Removal is proper here because each of the requisites for federal officer jurisdiction removal is met. It is undisputed that Raytheon, a corporation, is a "person" under the first of the above elements.

Here, Raytheon "acted under" a federal office because, as established by the Affidavits of Raytheon's retired engineer Angelo Fergione and materials scientist/engineer Austin Wolfrey, the AN/TRC-170 was designed, manufactured, tested, and had technical manuals and warning

8

ME1 14263078v.1

labels produced in accordance with extensive, detailed, precise requirements imposed by the government. All facets of the product were subject to extensive government review and supervision. Any warnings which accompanied the product were required to meet government specifications; Raytheon could not add any warnings without government approval, even if any such additional warnings would have been necessary – which they were not. Raytheon was not aware that the AN/TRC-170 presented any asbestos hazard – the AN/TRC-170 did not contain asbestos – and accordingly did not know of a hazard of which the government was not aware. Indeed the Affidavits of Mr. Fergione and Mr. Wolfrey establish that there was no asbestos in the AN/TRC-170, and the plaintiff has no evidence to the contrary. Furthermore, there is a wealth of information about the U.S. government's awareness of asbestos hazards prior to the issuance of the contract award for the AN/TRC-170 in 1976, including the adoption of the Occupational Safety & Health Act of 1970. This action involves "direct and detailed control of a federal officer" akin to that in *Lewis* and *Crackau*. Similarly, Raytheon asserted a colorable government contractor defense, based on the precise specifications imposed by the government for the AN/TRC-170, and Air Force acceptance of the product. Finally, there is a causal nexus between the complained-of conduct by Plaintiffs; the Plaintiffs' claims that exposure to alleged asbestos-containing products and alleged failure to warn of the hazards of such products is causally connected to the extensive federal control over every aspect of the AN/TRC-170 project, including the inability of Raytheon to create any warnings or warning labels for the product which would differ in any way from detailed federal requirements.

Thus, Raytheon has established that removal under the FORS is proper, and has timely sought such removal.

ME1 14263078v.1

### Copies of All Process, Pleadings, and Orders

Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Raytheon in the New Jersey Superior Court action are attached hereto as Exhibit G. No other process, pleadings, or orders were served upon, or otherwise received by, Raytheon or its attorneys.

### Conclusion

WHEREFORE, Defendant Raytheon Company hereby prays that this action from the Superior Court of New Jersey, Law Division, Middlesex County, proceed to the United States District Court for the District of New Jersey as an action properly removed thereto.

                                         **McCARTER & ENGLISH, LLP**
                                         Attorneys for Defendant,
                                           Raytheon Company

                              By:    *s/ John C. Garde*
                                      John C. Garde
                                      A Member of the Firm

Dated: October 19, 2012