RONALD S. SCEARCE AND
ALISA J. SCEARCE,                       :       UNITED STATES DISTRICT COURT
                                        :       FOR THE DISTRICT OF NEW JERSEY
                                        :
               Plaintiffs,              :
                                        :       Civil Action No. 1:12-cv-06676 (NLH) (JS)
                                        :
                                        :
v.                                      :
                                        :
                                        :
3M COMPANY F/K/A                        :
MINNESOTA MINING &                      :
MANUFACTURING CO., ET AL.               :
                                        :
                                        :
               Defendants.              :

---

## RAYTHEON COMPANY'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

---

**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
(973) 622-4444
Attorneys for Defendant,
Raytheon Company

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ............................................................................ 1

FACTS ................................................................................................................. 1

    I.     COMPLAINT ALLEGATIONS, INITIAL FACT SHEET, AND
          RAYTHEON ANSWER ............................................................................. 1

    II.    RAYTHEON COMPANY .......................................................................... 4

    III.   PLAINTIFF'S DEPOSITION TESTIMONY REGARDING ALLEGED
          RAYTHEON PRODUCT EXPOSURE .................................................... 5

    IV.   RAYTHEON'S NOTICE OF REMOVAL; AN/TRC-170 ...................... 6

    V.    NATURE OF SATELLITE, WIDEBAND AND TELEMETRY
          TECHNICIAN WORK ............................................................................. 8

DISCUSSION:  RELEVANT STANDARD FOR EVALUATING TIMELINESS AND
PROPRIETY OF REMOVAL ............................................................................... 9

    I.     TIME PERIOD FOR REMOVAL .......................................................... 9

    II.    SHOWING REQUIRED FOR REMOVAL ........................................... 11

          A.    Federal Officer Removal Statute – General Standard ................................ 11

          B.    Essential Elements for Removal ................................................................ 13

ANALYSIS:  THE MOTION TO REMAND SHOULD BE DENIED AS REMOVAL
WAS TIMELY, AND THIS COURT HAS JURISDICTION
OVER THIS ACTION ......................................................................................... 17

    I.     RAYTHEON TIMELY REMOVED THIS ACTION ........................... 17

    II.    THIS COURT HAS JURISDICTION OF THIS ACTION ................... 22

          A.    Introduction ................................................................................................ 22

          B.    Raytheon Has Demonstrated the "Feidt Factors" for Federal Officer
              Removal ..................................................................................................... 24

CONCLUSION ................................................................................................... 29

ME1 14584726v.1

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Advanced Surgery Ctr. v. Conn. Gen'l Life Ins. Co.*,
   No. 12–2715 (JLL), 2012 WL 3598815 (D.N.J. July 31, 2012),
   *recommendation adopted*, 2012 WL 3598799 (D.N.J. Aug. 21, 2012) ............ 11

*In re Asbestos Product Liability Litigation (No. VI)*,
   770 F. Supp. 2d 736 (E.D. Pa. 2011) .......................................................... 21, 23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)) ...................................................................................... 25

*Beamis v. Buffalo Pumps, Inc.*,
   No. 08-472S, 2009 WL 462543 (D.R. I. Feb. 23, 2009) ................................. 21

*Boyle v. United Techs. Corp.*,
   487 U.S. 500 (1988) ............................................................................ 16, 17, 27

*Brantley v. Borg-Warner Morse Tec, Inc.*,
   No. 3:12CV540 AJB (JMA), 2012 WL 1571129 (S.D. Cal. May 3, 2012) ...... 24

*Carroll v. United Airlines, Inc.*,
   7 F. Supp. 2d 516 (D.N.J. 1998) .................................................................... 10

*Castiglione v. Basen*,
   No. 09-3043, 2012 U.S. Dist. LEXIS 151580 (D.N.J. Oct. 22, 2012) .............. 25

*Colorado v. Symes*,
   286 U.S. 510 (1932) ...................................................................................... 12

*Connolly v. Aetna U.S. Healthcare, Inc.*,
   286 F. Supp. 2d 391 (D.N.J. 2003) ............................................................ 10, 23

*Crackau v. Lucent Techs.*, No. Civ. 03-1376 (DRD), 2003 WL 21665135
   (D.N.J. June 25, 2003) .................................................................................. 14

*Dilks v. 4520 Corp., Inc.*
   No. WDQ-12-2758, 2012 U.S. Dist. LEXIS 178913, *8-10 (D. Md. Dec.
   18, 2012) ..................................................................................................... 22

ME1 14584726v.1

*Durham v. Lockheed Martin Corp.*,
    445 F.3d 1247 (9th Cir. 2006) ................................................................. 13

*Feidt v. Owens Corning Fiberglas Corp.*,
    153 F.3d 124 (3d Cir. 1998)............................................... 14, 24, 25, 28

*Foster v. Mut. Fire, Marine, & Inland Ins. Co.*,
    986 F.2d 48 (3d Cir. 1993), *overruled on other grounds, Murphy Bros.*
    *Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) ........................ 10, 20

*Gilberg v. Stepan Co*,
    24 F. Supp. 2d 325 (D.N.J. 1998) ....................................................... 29

*Hagen v. Benjamin Foster Co.*,
    739 F. Supp. 2d 770 (E.D. Pa. 2010) ....................................... 13, 16, 18

*Huffman v. Saul Holdings Ltd. P'ship*,
    194 F.3d 1072 (10th Cir. 1999) ........................................................... 10

*Jefferson County v. Acker*,
    527 U.S. 423 (1999)............................................................................ 23, 24

*Lewis v. Asbestos Corp., Ltd.*,
    No. 10-650 FLW, 2012 WL 3240941 (D.N.J. Aug. 7. 2012)... 13, 14, 15, 16, 17,
    .................................................................................................... 25, 26

*Machnik v. Buffalo Pumps, Inc.*,
    506 F. Supp. 2d 99 (D. Conn. 2007).................................................... 24

*Moore v. Turner Construction Co*No.
    3:07-cv-5658-FLW, 2008 WL 4723017 (D.N.J. Oct. 24, 2008) ....................... 29

*Morgan v. Bill Vann Co.*,
    No. 11-0535-WS-B. 2011 WL 6056083 (S.D. Ala. Dec. 6, 2011) ................... 24

*N.J. Dept. of Environmental Protection v. Exxon Mobil Corp.*,
    381 F. Supp. 2d 398 (D.N.J. 2005)................................................... 13, 16

*N.J. Dept. of Envtl. Protection v. Dixo Co., Inc*,
    No. 06-1041 (SRC), 2006 WL 2716092 (D.N.J. Sept. 22, 2006) .................... 29

*N.J. Dept. of Envtl. Protection v. Viacom*,
    No. 06-1753 (HAA), 2006 WL 3534364 (D.N.J. Dec. 7, 2006) ..................... 29

ME1 14584726v.1

No. WDQ-12-2758, 2012 U.S. Dist. LEXIS 178913, *8-10 (D. Md. Dec. 18, 2012) ................................................................................................... 22

*O'Connell v. Foster Wheeler Energy Corp.*,
544 F. Supp. 2d 51 (D. Mass. 2008) ................................................. 24

*Orthopedic Specialists v. Horizon Blue Cross/Blue Shield*,
518 F. Supp. 2d 128 (D.N.J. 2007) ................................................... 29

*Pantalone v. Aurora Pump Co.*,
576 F. Supp. 2d 325 (D. Conn. 2008) ............................................... 21

*Ruppel v. CBS Corp.*,
No. 12-2236, 2012 WL 5971242 (7th Cir. Nov. 30, 2012) .................. 12, 14, 16

*Ryan v. Dow Chemical Co.*,
781 F. Supp. 934 (E.D.N.Y. 1992) ................................................... 13

*Steel Valley Authority v. Union Switch and Signal Div.*,
809 F.2d 1006 (3d Cir. 1987) ........................................................... 19

*Tucci v. Hartford Financial Services Group, Inc.*,
600 F. Supp. 2d 630 (D.N.J. 2009) ................................................... 10

*Watson v. Philip Morris Companies, Inc.*,
551 U.S. 142 (2007) .......................................................................... 12

*Weiderspahn v. Wing Enterprises, Inc.*,
No. 09–2441, 2009 WL 2070353 (D.N.J. July 10, 2009) .....................9

*Willingham v. Morgan*,
395 U.S. 402 (1969) .......................................................................... 12

## FEDERAL STATUTES

28 U.S.C. § 1442 ................................................................................ 12

28 U.S.C. § 1446 ..................................................................................9

28 U.S.C. § 1446(b)(3) .................................................................... 9, 20

28 U.S.C. § 1447(d) ............................................................................ 28

MEI 14584726v.1

## PRELIMINARY STATEMENT

Defendant Raytheon Company (Raytheon) responds in opposition to Plaintiffs' Motion to Remand (Doc. # 20) (Motion).

Raytheon's Notice of Removal (Doc. # 1) was timely filed, and establishes this Court's jurisdiction over this action. Contrary to their assertion, Plaintiffs' sparse Complaint allegations provided no "substantial degree of specificity" upon which Raytheon could have sought removal at an earlier time; Plaintiffs present a "20/20 hindsight" view, using information from Raytheon's Notice of Removal in an attempt to defeat the removal. Not until Plaintiff Ronald Scearce's deposition did Raytheon have sufficient information to exercise its right of removal, which it did within the mandated time period. Plaintiffs' arguments that jurisdiction is lacking are based on the wrong standard of proof and a distorted interpretation of relevant legal principles. Raytheon has demonstrated the propriety of the removal, and is not required to establish that it will prevail on the merits at this juncture. The Motion must be denied.

## FACTS

## I.   COMPLAINT ALLEGATIONS, INITIAL FACT SHEET, AND RAYTHEON ANSWER

To put Plaintiffs' Motion in proper context, a review of relevant pleadings, facts, and procedural issues is required. Plaintiffs filed their operative First

MEI 14584726v.1

Amended Complaint (Complaint) (Doc. #1-3) on or about July 19, 2012.  Plaintiffs

sued 40 defendants, including Raytheon.[1]

In their Complaint, Plaintiffs allege that Mr. Scearce was diagnosed with

mesothelioma "caused by exposure to Defendants' asbestos products."  (Compl. ¶

2.)  The following allegations about alleged exposure are made in the Complaint:

> In or about approximately 1981-82, Mr. Scearce was exposed to asbestos-containing flooring products while working as an assistant to flooring mechanics.

> Mr. Scearce was also exposed to asbestos during this same time period while doing various home repair projects, including work with flooring, drywall and joint compound.

> From approximately 1983 to 2004, Mr. Scearce was exposed to asbestos-containing products while conducting electric repair work at various Air Force base sites, including McGuire Air Force Base in New Jersey.  Mr. Scearce was additionally exposed to asbestos from communications equipment being installed and used during the same time period at that location [sic].

> Mr. Scearce was additionally exposed to asbestos while performing automobile repair work, including brake jobs on his personal automobiles in the 1980s.

(Compl. ¶¶ 3-6; paragraph numbers deleted.)

Plaintiffs assert tort theories of "negligence, breach of warranties, both

express and implied, and strict liability in tort," and of "market[ing] an ultra-

hazardous product" and "conspir[ing] . . . to withhold information" regarding

---

[1]Plaintiffs' assertion that there are 33 Defendants (Brief in Support of Motion, Doc. # 20-1 (Brief), p. 2) is incorrect.

-2-

asbestos hazards (Compl. ¶¶ 12-15, 17-18, 24-29). Plaintiffs also assert a claim based on failure to warn (Compl. ¶¶ 20-22), and a loss of consortium claim by Plaintiff Alisa Scearce (*id.* ¶¶ 30-32).

Notwithstanding assertion of several tort theories, Plaintiffs purport to disclaim federal jurisdiction for their claims, to the extent that any alleged exposure occurred "on a federal enclave," "on board vessels of the United States military," or in the "construction, maintenance, and/or repair of United States military vessels and/or aircraft," and state that such claims "are based only on the theory of failure to warn." (Compl. pp. 12-13.)

In their Initial Fact Sheet submitted with the Complaint (Doc. # 20-2, pp. 28-29), Plaintiffs state that Mr. Scearce's work sites were "US Air Force; Various sites," during dates of "1983-2004," involving a trade/occupation of "Satellite, Wideband & Telemetry Technician," as well as Doug Ganey Flooring, Danville, VA, from 1981-1982, with a trade/occupation of installing tile and linoleum flooring.

Raytheon filed its Answer to the Complaint on September 19, 2012 (Doc. # 1-4). Among other defenses, Raytheon asserted the government contractor defense, and that the Complaint failed to state a cause of action upon which relief can be granted. *See* Raytheon's Standard Answer, Fifth and Twenty-Second Separate Defenses.

Neither the allegations of the Complaint, nor the information provided in the Initial Fact Sheet, identified any Raytheon product to which Plaintiff allegedly had been exposed.   Nor did the allegations give Raytheon adequate information to determine whether the action was removable.

## II.   RAYTHEON COMPANY

Raytheon Company (Raytheon), founded 90 years ago, is a technology and innovation leading company now specializing in defense, homeland security, and other government markets worldwide.[2]   Raytheon's endeavors include providing state-of-the-art electronics, mission systems integration and other capabilities in the areas of sensing, effects, and command, control, communications and intelligence systems, as well as a broad range of mission support services.[3]

Raytheon has been engaged in the development and production of electronic warfare (EW) system solutions, including airborne and shipboard jammers and electronic attack and support programs and soldier carried applications, for the United States Air Force and other government entities, for over 50 years.[4] Several communications systems provided by Raytheon have been utilized by the Air

---

[2] *See generally* www.raytheon.com/ourcompany/history This Court can take judicial notice of these basic facts regarding Raytheon that are not subject to reasonable dispute; *see* F.R.E. 201.

[3] *See* http://investor.raytheon.com/phoenix.zhtml?c=84193&p=irol-newsArticle&ID=1647530&highlight (noting that Raytheon was recently awarded by the U.S. Air Force a follow-on contract to the Contractor Field Service system, originally awarded in 1999).

[4] *See* http://www.raytheon.com/capabilities/ew/

Force.[5]   The Air Force has also acquired other Raytheon products, including a

network intrusion detection device and laser detecting-ranging-tracking set.[6]

Raytheon has also developed a number of products for civilian use,

including microwaves and radio equipment.[7]   Raytheon has developed a wide

range of communications systems, including during the period of the 1980s

forward.[8]   These include, during the past twenty years, an optical-phased array

laser communications system.[9]

**III.   PLAINTIFF'S DEPOSITION TESTIMONY REGARDING ALLEGED RAYTHEON PRODUCT EXPOSURE**

The Complaint did not identify any Raytheon product forming the basis of

Plaintiffs' allegations, nor was any such product named in Plaintiffs' Initial Fact

Sheet.   At his deposition taken on September 21, 24, and 25, 2012, Mr. Scearce

identified for the first time a Raytheon product that he alleged he had used:   the

AN/TRC-170.   Mr. Scearce stated that he used the product at Air Force bases in

---

[5] *See* http://www.raytheon.com/businesses/ncs/ics/index.html
[6] *See*
http://www.raytheon.com/newsroom/rtnwcm/groups/public/documents/content/rtn
08_tech_infoops_pdf4.pdf;
http://raytheon.mediaroom.com/index.php?s=43&item=2128.
[7] *See* http://www.raytheon.com/ourcompany/90years/index.html;
http://www.raytheon.com/businesses/ncs/;
http://www.raytheon.com/capabilities/products/environmental_solutions/;
http://www.raytheon.com/ourcompany/history/.   Those products do not include
flooring products, drywall, or joint compound products.
[8] *See* www.raytheon.com/technology_today/archive/2004_Issue1.pdf (p. 13).
[9] *See* http://www.raytheon.com/ourcompany/innovation/

Mississippi, Georgia, Korea, Kuwait, Italy, and Germany.  (*See* Ex. A, Scearce

Dep. 44:9-46:20;  61:9-24;  64:12-20;  77:24-80:2;  94:15-95:4;  98:9-99:5;  102:10-

103:1;  104:10-24;  224:5-225:11;  249:13-21;  272:3-20;  319:17-23;  323:3-15;

436:21-439:17; 458:9-459:18; 461:21-479:24; 555:10-559:7.)[10]  However, he did

not state that he used the AN/TRC-170 at the McGuire Air Force base in New

Jersey.  Mr. Scearce testified that he could not say that the product contained any

asbestos. (Ex. A, 479:10-24.)

## IV.    RAYTHEON'S NOTICE OF REMOVAL; AN/TRC-170

Plaintiff's deposition gave Raytheon, for the first time, sufficient

information upon which to determine that the action was removable.  Raytheon

filed its Notice of Removal (Doc. #1) on October 19, 2012, within 30 days of

Plaintiff's initial deposition testimony.

Raytheon's Notice of Removal and exhibits (Docs. ## 1-3 – 1-10) provided

detailed information about the AN/TRC-170 product and the process by which it

was designed, manufactured, tested, and its supporting material published, for its

acceptance and use by the Air Force.  The exhibits included affidavits of Raytheon

personnel involved in the AN/TRC-170 project, the contract between the Air Force

and Raytheon for the project, and performance specifications for the project.  That

information is incorporated by reference, and briefly summarized here.

---

[10]References are to the final deposition transcript; only a preliminary draft was
available at the time of Raytheon's Notice of Removal.

-6-

The AN/TRC-170 is a mobile tactical digital troposcatter radio system. (Doc. # 1-6, Fergione Affidavit, ¶¶ 2-3.)   It was designed and manufactured according to precise, detailed specifications set forth by the Air Force in the contract for the product.  (*Id.*, ¶ 4; Doc. # 1-7, Wolfrey Affidavit, ¶ 3; Doc. # 1-8, performance specification for AN/TRC-170; Doc. # 1-10, contract for AN/TRC-170.)   The government closely monitored every step of design, manufacture, testing, and publications for the AN/TRC-170.  (Doc. # 1-6, ¶¶ 5, 7, 8, 9.)  The government reviewed and approved the choice of all materials for each component. (Doc. # 1-6, ¶ 4; Doc. # 1-7, ¶ 3.)  The specifications prohibited the use of asbestos components in the equipment.  (Doc. # 1-6, ¶ 4; Doc. # 1-7, ¶ 5.)

Warning labels were provided on the equipment and on Technical Orders in accordance with applicable technical specifications; any warning labels were reviewed and approved by the government.  Raytheon could not create warnings or instruction labels without specific government approval.  (Doc. # 1-6, ¶¶ 9, 10; *see also, e.g.*, Doc. # 1-8, pp. 38, 52-54, 72, 83; Doc. # 1-10, pp.77-78, 97, 99, 100, 101, 102, 119, 120.)

The government approved the AN/TRC-170; the Air Force would not have accepted delivery of the equipment unless every specification had been met.  (Doc. # 1-6, ¶ 11.)

-7-

## V.    NATURE OF SATELLITE, WIDEBAND AND TELEMETRY TECHNICIAN WORK

Plaintiffs' Initial Fact Sheet describes Mr. Scearce's employment as including work as a "Satellite, Wideband, & Telemetry Technician" at "US Air Force; Various sites" from "1983-2004" (Doc. # 20-2, p. 29). The job duties encompassed by this title are quite broad, and do not narrow the alleged exposure to a single product or type of product. *See* "United States Air Force Occupation Survey Report, Satellite, Wideband, and Telemetry Systems," available at www.dtic.mil/dtic/tr/fulltext/u2/a408079.pdf, an August 2002 survey describing duties of U.S. Air Force personnel involved in such work as:

> deploying, operating, and sustaining ground and space based satellite, Beyond Line-of-Sight (BLOS) wideband communications, telemetry, and instrumentation systems; managing and performing design support, installation, calibration, testing, operation, maintenance, and repair of facilities, systems, equipment, and related subsystems; monitoring, analyzing, and directing performance checks and measurements to ensure acceptable performance; configuring equipment; establishing and maintaining communications links with distant terminals; operating earth terminal control consoles and monitoring system performance indicators; implementing operational directives; and managing wideband and satellite earth terminal facilities or activities.

(*Id.* at 5; *see also id.* at 26, 36.) The survey contains a single reference to the task "[p]erform an operational check of the TRC 170 Tropospheric Scatter" – noting it was performed by fewer than 20 percent of the survey respondents. (*Id.* at 54.)

-8-

*See also* the website for Society of Satellite Professionals International, http://www.sspi.org/page/Liftoff_Paths, describing scope of military work with satellite technology as "very broad," and involving use of such technology "to connect with troops on the ground, ships at sea and aircraft in the air, as well as for reconnaissance and intelligence-gathering through space-based cameras and sensors."

## DISCUSSION:  RELEVANT STANDARD FOR EVALUATING TIMELINESS AND PROPRIETY OF REMOVAL

### I.    TIME PERIOD FOR REMOVAL

When the relevant legal principles relating to the timeliness of Raytheon's Notice of Removal and the substantive validity of the Notice are considered, it is clear that the removal was proper and that this Court has jurisdiction.  An action is removable, pursuant to 28 U.S.C. § 1446, within 30 days after the defendant's receipt of a pleading that indicates the action is removable, or, if not initially removable, within 30 days after receipt by the defendant of an "amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.,* § 1446(b)(3).

In determining whether the defendant can ascertain removability based on the complaint, as this Court has noted, the "[d]efendant's knowledge is irrelevant"; the allegations of the complaint are determinative. *Weiderspahn v. Wing Enterprises, Inc.*, No. 09–2441 (JEI /AMD), 2009 WL 2070353, *3 (D.N.J. July

10, 2009). The inquiry "begins and ends *within the four corners of the pleading*," and is based upon "whether the document informs the reader, *to a substantial degree of specificity*," whether the action is removable. *Foster v. Mut. Fire, Marine, & Inland Ins. Co.*, 986 F.2d 48, 53-54 (3d Cir. 1993) (emphasis added), *overruled on other grounds, Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999). In other words, the question is whether the defendant "can reasonably and intelligently conclude" from the complaint that the action is removable. *See Carroll v. United Airlines, Inc.*, 7 F. Supp. 2d 516, 521 (D.N.J. 1998).

This Court has determined that deposition testimony can constitute an "other paper," for purposes of the statute, as Plaintiffs concede (Brief, p. 13). *See Connolly v. Aetna U.S. Healthcare, Inc.*, 286 F. Supp. 2d 391, 398-99 (D.N.J. 2003) (deposition testimony can serve purpose of removal statute, which is to ensure that defendant has notice of "'congressionally bestowed right to remove upon being given notice in the course of the case that the right exists'" (quoting *Huffman v. Saul Holdings Ltd. P'ship,* 194 F.3d 1072, 1078 (10th Cir. 1999)).

This Court has noted that the 30-day removal period is designed to ensure that a defendant has "'adequate time' to consider removal after learning not only that it was the subject of a lawsuit, but also the basis for removal to determine whether to remove an action." *See Tucci v. Hartford Financial Services Group,*

*Inc.*, 600 F. Supp. 2d 630, 632 (D.N.J. 2009) (*quoting Murphy Bros.,* 526 U.S. at

351-52); *accord Advanced Surgery Ctr. v. Conn. Gen'l Life Ins. Co.*, No. 12–2715

(JLL), 2012 WL 3598815, **6-9 (D.N.J. July 31, 2012), *recommendation adopted*,

2012 WL 3598799 (D.N.J. Aug. 21, 2012).

## II.   SHOWING REQUIRED FOR REMOVAL

### A.   Federal Officer Removal Statute – General Standard

Federal officer jurisdiction is provided by the Federal Officer Removal

Statute (FORS), 28 U.S.C. § 1442, which states, as relevant here:

> (a)   A civil action . . . that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> > (1)   The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office. . . .

The statute was enacted to protect "the very basic interest in the enforcement

of federal law through federal officials," for suit arising from "any act 'under

color' of federal office." *Willingham v. Morgan*, 395 U.S. 402, 406 (1969).  The

words "acting under" are broad, and the U.S. Supreme Court has made clear that

the statute must be "liberally construed." *Watson v. Philip Morris Companies,*

*Inc.*, 551 U.S. 142, 147 (2007) (quoting *Colorado v. Symes*, 286 U.S. 510, 517

(1932)).

ME1 14584726v.1

The officer need assert only a "colorable," not a "clearly sustainable," defense.  "The officer need not win his case before he can have it removed." *Willingham*, 395 U.S. at 406.  *See also Ruppel v. CBS Corp.*, No. 12-2236, 2012 WL 5971242, *4 (7th Cir. Nov. 30, 2012) ("At this point, we are concerned with who makes the ultimate determination, not what that determination will be.").  The statute provides an exception to the general rule that removal of an action is governed by allegations in a "well-pleaded complaint."  *N.J. Dept. of Environmental Protection v. Exxon Mobil Corp.*, 381 F. Supp. 2d 398, 401 n. 4 (D.N.J. 2005).  This is because federal officer removal is based on defensive issues, rather than issues raised in the complaint.  *Id.*

Thus, a defendant who meets the requisite elements for removal under the statute "gain[s] access to federal court [even] where no federal question is presented by the plaintiff."  *Id.* (quoting *Ryan v. Dow Chemical Co.*, 781 F. Supp. 934, 939 (E.D.N.Y. 1992)).  This is true even if the defendant is a private entity acting "under color of" federal office, has a "special burden" to demonstrate entitlement to removal, and is not entitled to the same "broad reading" of the statute that federal officials would be.  *See Lewis v. Asbestos Corp., Ltd.*, No. 10-650 FLW, 2012 WL 3240941, **4, 6 (D.N.J. Aug. 7, 2012); *Exxon*, 381 F. Supp. 2d at 403 n. 5.  The purpose for this rule is simple; as the courts have said: "After all, '[i]f the federal government can't guarantee its agents access to a federal forum

-12-

if they are sued or prosecuted, it may have difficulty finding anyone willing to act on its behalf.'" *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 782 (E.D. Pa. 2010) (*quoting Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006)).

### B. Essential Elements for Removal

Removal under the FORS is appropriate when the defendant demonstrates that:

(1)    it is a "person" within the meaning of the statute;

(2)    the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office;

(3)    it raises a colorable federal defense; and

(4)    there is a causal nexus between the claims and the conduct performed under color of a federal office.

*Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998); *accord Ruppel*, 2012 WL 5971242, at *3; *Lewis*, 2012 WL 3240941, *4; *Crackau v. Lucent Techs.*, No. Civ. 03-1376 (DRD), 2003 WL 21665135, *2 (D.N.J. June 25, 2003).

### (1)    *"Person" under removal statute*

A corporation is a "person" for purposes of the federal officer removal statute. *See, e.g., Lewis*, 2012 WL 3240941, *4 ("Courts have consistently recognized that for the purposes of 1442(a)(1), a corporation qualifies as a person."); *accord Crackau*, 2003 WL 21665135, *2.

-13-

### (2)   *"Acting under" a federal office*

To establish the second element, the removing party must demonstrate that it performed the complained-of activity at the direction of official federal authority. *Lewis*, 2012 WL 3240941, *4. "Specifically, a defendant must show that the action in question was done under the direct and detailed control of a federal officer." *Id.*

The requisite control can be satisfied by a showing of strong government intervention. *Id.See Lewis* (in asbestos action, holding that production of turbines under U.S. Navy standards met the "acting under" requirement); *Crackau*, 2003 WL 21665135, * 5 (in action premised on exposure to ionizing radiation from military radar devices, holding that production of radar devices under U.S. Army direction met requirement; as to "warnings regarding safety," defendant made sufficient showing that "government guidelines and specifications" controlled its activities).

### (3)   *Colorable defense*

As to the third element, the defendant need not demonstrate that the federal defense is "ultimately . . . meritorious," but only that a *"colorable claim"* to the defense has been made. *E.g., Lewis*, 2012 WL 3240941,*5 (emphasis added); *see also Exxon*, 381 F. Supp. 2d at 404 (holding that under "colorable" standard, government contractor defense assertion met standard, even when it was "not

-14-

entirely clear" that defense would apply to merits of action); *Hagen*, 739 F. Supp. 2d at 784 (finding colorable defense based on defendants' affidavits demonstrating that Navy was responsible for lack of asbestos warnings).

Here, Raytheon has asserted the government contractor defense. The defense is designed to recognize the "uniquely federal interest" in "civil liabilities arising out of the performance of federal procurement contracts." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 505-06 (1988). The elements of the defense are: (1) the United States must have approved reasonably precise specifications, (2) the equipment conformed to those specifications; and (if warnings of a hazard are at issue) (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but unknown to the United States. *Lewis*, 2012 WL 3240941, *5 (citing *Boyle*, 487 U.S. at 512); *see, e.g., Ruppel*, 2012 WL 5971242, at *6-7 (finding that defendant had colorable government contractor defense for "failure-to-warn" and "use-of-asbestos" claims arising out of defendant's provision of turbines to the U.S. Navy).

The necessary showing for these requirements is similar to that under the "acting under" federal officer jurisdiction elements above – that is, supervision and control by the government over the design and other facets of the product in question, and acceptance of the product by the government. *See Lewis*, 2012 WL 3240941, *5 (holding this element satisfied by Navy control over "almost every

-15-

facet of its turbines" and superior knowledge by Navy of potential hazards);

*Crackau*, 2003 WL 21665135, *3 (deeming element met where defendant had

entered into defense contracts and produced government-mandated products).

> The third of the above elements is necessary because:

> in its absence, the displacement of state tort law would create
> some incentive for the manufacturer to withhold knowledge of
> risks, since conveying that knowledge might disrupt the
> contract but withholding it would produce no liability.  We
> adopt this provision lest our effort to protect discretionary
> functions perversely impede them by cutting off information
> highly relevant to the discretionary decision.

*Boyle*, 487 U.S. at 512-13.

### (4)   *Causal nexus*

The final element is satisfied when the "complained-of action is closely

related to direct federal control." *Lewis*, 2012 WL 3240941, *6 (finding causal

connection existed between plaintiffs' allegations of lack of warning of asbestos

hazard aboard naval vessel and defendant's assertion that Navy exercised complete

control over warnings); *Crackau*, 2003 WL 21665135, *5 (holding requirement

met where "Plaintiffs are attempting to hold Lucent liable for the very conduct

directed by federal officers – Lucent's manufacture of the military products at

issue, and in particular the emissions from the radar transmissions tubes"); *Hagen*,

739 F. Supp. 2d at 785 (deeming requirement met by showing of colorable federal

defense that any failure to warn related to government control over product manufactured by defendants).

## ANALYSIS:  THE MOTION TO REMAND SHOULD BE DENIED AS REMOVAL WAS TIMELY, AND THIS COURT HAS JURISDICTION OVER THIS ACTION

### I.    RAYTHEON TIMELY REMOVED THIS ACTION

Considering the proper legal standard – whether the "four corners" of the Complaint provided a "substantial degree of specificity" on the removability of the action – the Complaint utterly failed to provide notice to Raytheon that the action was removable.  The Plaintiffs' allegations concerning the period 1983-2004 are entirely void of information to notify Raytheon that the action was removable. Those allegations are that Mr. Scearce did "electrical repair work" at "various Air Force base sites," which "includ[ed] McGuire Air Force Base in New Jersey," and that Mr. Scearce was exposed to asbestos "from communications equipment being installed and used during that same time period *at that location*" – *i.e.*, based on a fair reading of the Complaint, at McGuire Air Force Base.

Given the vast breadth of Raytheon's operations, Raytheon could not "reasonably and intelligently" determine from the vague, general Complaint allegations what type of Raytheon product or products might fall within those allegations – let alone the level of military involvement, if any, with such product(s).  At most, the Complaint alleged that a wide array of unidentified

-17-

electrical or communications products, civilian and/or military, could be implicated.

While the Complaint allegations must be deemed true for purposes of evaluating removability (*see Steel Valley Authority v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987)), that does not aid Plaintiffs. ***The Complaint merely alleges that some unidentified and unidentifiable product(s) of Raytheon's to which Mr. Scearce was exposed contained asbestos.*** Contrary to Plaintiffs' assertion, the Complaint did not allege that Mr. Scearce was exposed to the Raytheon AN/TRC-170; indeed, there is no mention of the term "AN/TRC-170," or any Raytheon product, anywhere in the Complaint. Plaintiffs' contention that Raytheon "admitted" that the product was identified in the Complaint (Brief, pp. 7, 13, 14-15, 19) is specious, given that no product was ever identified until Plaintiff's deposition more than two months after the Complaint was filed.

Raytheon's inability to have divined from the Complaint that the AN/TRC-170 was the relevant product is apparent from factors including the following, available only with the benefit of "20-20 hindsight," and not based upon information found with in the "four corners of the Complaint;"

- the AN/TRC-170 is a mobile unit – the Complaint does not describe any mobile products;

- the AN/TRC-170 is a troposcatter digital unit – the Complaint does not use these terms;

-18-

- Mr. Scearce later testified that he used the AN/TRC-170 at a number of Air Force bases, which did not include McGuire Air Force base; yet the Complaint allegations specifically call out that base as the site of Mr. Scearce's alleged exposure.

Plaintiffs' further contention that the Initial Fact Sheet added to the level of specificity of their allegations is also devoid of merit. That information cannot be considered on timeliness of removal, under the relevant "four corners" standard. *See Foster*, 986 F.2d at 53-54. Even if considered as an "other paper" triggering the removal period pursuant to § 1446(b)(3), the Fact Sheet's reference to Plaintiff's occupation of "Satellite, Wideband & Telemetry Technician" does nothing to narrow the significant universe of Raytheon products, given the wide range of duties associated with that description, as outlined above – only a minority of which included work with troposcatter communications equipment. The document submitted by Plaintiffs on this issue – a 2009 job description – is irrelevant as, among other problems, it was generated well outside the alleged period of Mr. Scearce's exposure to "communications equipment," from 1983-2004. (*See* Brief, p. 15; Doc. # 20-2, p. 57.)

Plaintiffs' reliance on the decision by the U.S. District Court for the District of Connecticut in *Pantalone v. Aurora Pump Co.*, 576 F. Supp. 2d 325 (D. Conn. 2008), is misplaced; that decision is factually inapposite. There, the plaintiff alleged asbestos exposure based on service in the U.S. Navy. In its removal notice, the defendant asserted that "*all [items of] equipment*," including "*[a]ll pumps*,"

-19-

that it supplied for use aboard Navy vessels, were built to military specifications. *Id.* at 328 (emphasis added).    Based on the defendant's assertion, the court determined that the information supplied with the removal notice did not materially add to the information on removability available from the complaint, and thus that the removal notice was not timely filed within 30 days of the complaint (although the defendant had established that the action was removable under federal officer jurisdiction). *Id.* at 333-34. *See Beamis v. Buffalo Pumps, Inc.*, No. 08-472S, 2009 WL 462543, **1, 3 (D.R.I. Feb. 23, 2009) (rejecting plaintiff's claim regarding untimely removal, and noting that *Pantalone* was "highly fact specific and distinguishable"; in case at bar, complaint allegations that plaintiff was exposed to various defendants' asbestos-containing products "including but not limited to exposure occurring through his work as a lagger and rigger at Portsmouth Naval Shipyard" provided inadequate information to trigger removal period). *See also In re Asbestos Product Liability Litigation (No. VI)*, 770 F. Supp. 2d 736, 739-40 (E.D. Pa. 2011) (holding that complaint allegations that plaintiff was exposed to 25 defendants' asbestos products of various sorts, including "insulation" and "electronic and electronic equipment," at the Long Beach Naval Shipyard, and plaintiff's home and work at a meat processing facility, were inadequate to trigger removal period as to turbine supplier).

-20-

The U.S. District Court for the District of Maryland's decision cited in Plaintiffs' supplemental submission is also unavailing. In that case, *Dilks v. 4520 Corp., Inc.*, the defendant did not remove the case until nearly five months after the plaintiff provided extensive answers to interrogatories detailing the decedent's service aboard U.S. Navy ships. No. WDQ-12-2758, 2012 U.S. Dist. LEXIS 178913, *8-10 (D. Md. Dec. 18, 2012). Because the information in those detailed responses clearly put the defendant on notice of the potential for federal officer jurisdiction, the court rejected the defendant's untimely attempt to remove the case five months after the responses were served and four months after the 30-day period expired. *Id.* at *11-17. Here, of course, no interrogatory responses have been served, and not until Plaintiff's deposition did any information arise to put Raytheon on notice of the removability of this case.

Plaintiffs do not, and cannot, dispute that Raytheon's Notice of Removal was filed within the requisite 30 days of Plaintiff's deposition testimony, which was the event triggering the removal period. Only with the deposition of Mr. Scearce did Raytheon acquire adequate information upon which to evaluate its "congressionally bestowed right to remove." *Connolly*, 286 F. Supp. 2d at 398-99 (citation and quotation marks omitted). Plaintiffs' assertion that removal was untimely must be rejected.

-21-

## II.   THIS COURT HAS JURISDICTION OF THIS ACTION

### A.   Introduction

Raytheon has demonstrated that this Court has federal officer jurisdiction over this action for removal purposes, based on this Court's and Third Circuit jurisprudence.  Raytheon need not establish that it will prevail on the merits of its government contactor defense – but only that the defense is "colorable."  Raytheon need not show it will win its case in order to remove it.  Plaintiffs' attempt to hold Raytheon to an improper standard – and its sophistic argument that a lack of asbestos in the Raytheon product defeats jurisdiction – must be rejected.

Moreover, Plaintiffs' attempted disclaimer of federal jurisdiction – and attempt to rewrite their multi-theory Complaint allegations into a single failure-to-warn claim to avoid such jurisdiction – should be given no effect.  It is inconsistent with the very concept of federal officer jurisdiction, which is met *regardless of the nature of plaintiff's* claims if the defense to those claims "depends on federal law." *In re Asbestos Litigation*, 770 F. Supp. 2d at 742 (*quoting Jefferson County v. Acker*, 527 U.S. 423, 431 (1999)).  To illustrate, this Court in *Crackau* rejected the plaintiffs' attempt "to establish that federal enclave jurisdiction is inappropriate by focusing on their products liability claims." *Crackau*, 2003 WL 21665135, at *6. This Court concluded that "the mere existence of products liability claims will not defeat federal enclave jurisdiction." *Id.*   Here, therefore, Plaintiffs' purported

-22-

"Disclaimer of Federal Jurisdiction" at the conclusion of the Complaint – in which plaintiffs "specifically disclaim any federal cause of action" and focus "only on the theory of failure to warn" – has no effect on the removability of this matter. (Compl. pp. 12.)

Thus, giving effect to Plaintiffs' purported disclaimer "would deprive the federal officer of the right to have the adequacy of the threshold determination, whether there is federal subject matter jurisdiction under the federal officer removal statute, made by a federal court." *Id.* (*quoting Acker* and also *Feidt*, 153 F.3d at 127). A number of other courts have refused to give such attempted disclaimers effect in asbestos litigation, for similar reasons. *See, e.g., Brantley v. Borg-Warner Morse Tec, Inc.*, No. 3:12CV540 AJB (JMA), 2012 WL 1571129, *2 (S.D. Cal. May 3, 2012); *Morgan v. Bill Vann Co.*, No. 11-0535-WS-B. 2011 WL 6056083, *9 (S.D. Ala. Dec. 6, 2011); *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54 n. 6 (D. Mass. 2008); *Machnik v. Buffalo Pumps, Inc.*, 506 F. Supp. 2d 99, 103 n. 1 (D. Conn. 2007) (noting that "even artful pleading around any federal claims cannot defeat federal subject matter jurisdiction"). In any event, because this Court "is free to ignore legal conclusions" in the Complaint, *Castiglione v. Basen*, No. 09-3043, 2012 U.S. Dist. LEXIS 151580 (D.N.J. Oct. 22, 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), Plaintiffs' purported

-23-

"Disclaimer" asserting that "there can be no valid claim to federal jurisdiction" is of no importance. (Compl. pp. 13.)

**B.**   **Raytheon Has Demonstrated the *Feidt* Factors" for Federal Officer Removal**

Removal is proper here because each of the *Feidt* requisites for federal officer jurisdiction, discussed above, is met by the materials submitted with Raytheon's removal notice, and referred to in this Response. First, it is undisputed that Raytheon, a corporation, is a "person" under the first of those elements.

Second, Raytheon "act[ed] under" a federal office because, as established by the Affidavits of Raytheon's retired engineer Angelo Fergione and materials scientist/engineer Austin Wolfrey (Doc. ## 1-6 and 1-7), the AN/TRC-170 was designed, manufactured, tested, and had technical manuals and warning labels produced in accordance with extensive, detailed, precise requirements imposed by the government. (*See also* Doc. ## 1-8 (performance specification) and 1-10 (contract).) All facets of the product were subject to extensive government review and supervision. Thus, this action involves "direct and detailed control of a federal officer" akin to that in *Lewis* and *Crackau*.

On this element, Plaintiffs challenge the degree to which warnings for the AN/TRC-170 were subject to government control. However, any warnings which accompanied the product were required to meet government specifications; Raytheon could not add any warnings without government approval, even if any

-24-

such additional warnings would have been necessary – which they were not.  The degree to which warnings were subject to government control is evident from the Fergione Affidavit (Doc. # 1-6) and from the specifications and contract documents appended to the removal notice.  For example, those documents required warnings for "materials which will liberate gases or liquids which may combine with the atmosphere to become corrosive, produce toxic fumes or combustible mixtures," and for instances when "voltage of 115 or more volts nominal value is exposed during maintenance."  (Doc. # 1-8, p. 54.)  This degree of government control over warnings is equivalent to that in *Lewis, supra.*

Notably, the AN/TRC-170 documents do not state that warnings for asbestos are required.  That is because ***the AN/TRC-170 specifications required that the product contain no asbestos***.  (*See* Doc. # 1-6, ¶ 4; Doc. # 1-7, ¶ 6.)  Thus, any government requirement regarding asbestos warnings would have been superfluous and unnecessary.  Plaintiffs' assertion that evidence of lack of asbestos in the challenged product is "irrelevant" (Brief, p. 29) – in a product liability case premised on alleged asbestos exposure – is stunning.

Third, Raytheon has established a "colorable" government contractor defense.  The government approved precise specifications for the AN/TRC-170, to which the product conformed – meeting the first and second requirements for the defense.  The basis for the third requirement of the defense – that the supplier warn

-25-

the government of hazards known to the supplier but unknown to the government –

was explained by the U.S. Supreme Court in *Boyle*, 487 U.S. at 512-13: ***avoidance***

***of an "incentive for the manufacturer to withhold knowledge of risks***" (emphasis

added). However, where there is ***no risk of asbestos contamination*** from a

product containing no asbestos, there is ***no conduct implicating this third prong*** of

the government contractor defense. Regardless, whether a warning was necessary,

including whether Raytheon knew of asbestos hazards that were not known to the

government, is a factual issue that may be determinative of the ultimate success of

Raytheon's government contractor defense, but substantive proof on this point

beyond the "colorable" standard is simply not required to sustain removal. Thus,

Raytheon appropriately submitted information with its removal notice on the lack

of asbestos materials in the AN/TRC-170. This information indicated that

Raytheon was not aware that the AN/TRC-170 presented any asbestos hazard – the

AN/TRC-170 did not contain asbestos, and accordingly did not know of a hazard

of which the government was not aware. Mr. Scearce testified that he has no

evidence to the contrary. Furthermore, there is a wealth of information about the

U.S. government's awareness of asbestos hazards prior to the issuance of the

contract award for the AN/TRC-170 in 1976, including the adoption of the

Occupational Safety & Health Act of 1970.

-26-

Finally, there is a causal nexus between the conduct complained of by Plaintiffs and the government-controlled activity. The Plaintiffs' claims that exposure to alleged asbestos-containing products, and alleged failure to warn of the hazards of such products, is causally connected to the extensive federal control over every aspect of the AN/TRC-170 project, including the inability of Raytheon to create any warnings or warning labels for the product which would differ in any way from detailed federal requirements.[11] Notably, Plaintiffs assert that Raytheon "may or may not, as ultimately determined in discovery," have followed instructions from government authority on product warnings (Brief, p. 31). But Raytheon is not required to prove its defense at this juncture – it must only make a showing of "direct and detailed" government control – which it has done.

Plaintiffs cite no authority for their quizzical assertion that Raytheon has "undermined" its government contractor defense through an assertion that a product contains no asbestos (Brief, pp. 33-34). No reported decision can be

---

[11] On this requirement, Plaintiffs cite the holding in *Feidt*, 153 F.3d 124 (Brief, pp. 30-31). There, the district court construed the plaintiffs' complaint as being based solely on a theory of failure to warn of asbestos exposure, and on that ground, remanded the case for failure of the defendant to establish a causal nexus between the complained-of failure to warn and government control of the defendant's conduct. *Id.* at 126. The district court did not base its construction on an attempt by the plaintiff to narrow the complaint (*id.* at 128 n. 3), as Plaintiffs attempt here. The Third Circuit noted that the district court "[a]t worst, . . . made a mistake" in so construing the complaint. *Id.* at 128. The Third Circuit held that, in any event, it had no jurisdiction to review remand, pursuant to 28 U.S.C. § 1447(d). *Id.* at 128. Thus, the Third Circuit did not approve the district court's holding.

-27-

located to support such a notion, perhaps due to the startling nature of the assertion.   Given that Raytheon need only establish a "colorable" claim to the defense – which it has done – Plaintiffs' assertion is meritless in any event.[12]

---

[12]A number of cases on which Plaintiffs rely do not aid their argument because they are factually inapposite.  *See, e.g., Moore v. Turner Construction Co*, No. 3:07-cv-5658-FLW, 2008 WL 4723017 (D.N.J. Oct. 24, 2008) (rejecting federal officer jurisdiction due to lack of causal nexus between federal control over 9/11 cleanup and claim for breach of contract for work performed for private contractor in cleanup); *Orthopedic Specialists v. Horizon Blue Cross/Blue Shield*, 518 F. Supp. 2d 128 (D.N.J. 2007) (reasoning that promissory estoppel claim on payment of benefits by medical provider against health insurer did not "arise under" federal employee health benefits statute); *N.J. Dept. of Envtl. Protection v. Viacom*,  No. 06-1753 (HAA), 2006 WL 3534364, **3-4 (D.N.J. Dec. 7, 2006) (holding that "acting under" and causal nexus requirements were not met in environmental contamination suit as government did not exert "direct and detailed control" over waste discharge and disposal); *N.J. Dept. of Envtl. Protection v. Dixo Co., Inc*, No. 06-1041 (SRC), 2006 WL 2716092, **2-3 (D.N.J. Sept. 22, 2006) (same); *Gilberg v. Stepan Co*, 24 F. Supp. 2d 325 (D.N.J. 1998) (*sua sponte*raising and disallowing federal officer jurisdiction as to claims of environmental contamination from a facility over which government had some degree of control).

ME1 14584726v.1

## CONCLUSION

Raytheon has met all relevant requirements for federal officer jurisdiction removal.  Raytheon respectfully requests that this Court deny Plaintiffs' Motion to Remand.

McCARTER & ENGLISH, LLP
Attorneys for Defendant
Raytheon Company


By:   *s/ John C. Garde*
John C. Garde
A Member of the Firm

Dated:  December 26, 2012

-29-