**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                  :

RONALD S. SCEARCE et al.,      :
                                  :

             Plaintiffs,      :     Civil No. 12-6676 (RBK/JS)
                                  :

                v.            :     **OPINION**
                                  :

3M COMPANY, et al.           :
                                  :

             Defendants.    :
_____ :

**KUGLER**, United States District Judge:

      This matter comes before the Court on the motion of Ronald S. Scearce and Alicia J. Scearce ("Plaintiffs") to remand this action to the Superior Court of New Jersey, Middlesex County pursuant to 28 U.S.C. §1447(c).  Plaintiffs contend that Defendant Raytheon ("Raytheon") untimely removed this action ninety days after service.  Raytheon counters that its removal was timely because although the company received Plaintiffs' complaint on July 19, 2012, the complaint did not provide sufficient factual orientation to notify Raytheon that the action was removable.  Instead, Raytheon argues that the company was not aware of federal jurisdiction until Mr. Scearce's deposition in September 2012.  Raytheon argues that it promptly filed the notice of removal on October 19, 2012, within 30 days of learning of the basis for federal jurisdiction.  Because the Court finds that Raytheon has not satisfactorily established the timeliness of removal, Plaintiffs' motion to remand is **GRANTED**.

## I.  BACKGROUND

      On July 3, 2012, Plaintiffs filed a complaint in the Superior Court of New Jersey, Law

Division, Middlesex County. In the complaint, Plaintiffs alleged state law causes of action against numerous defendants based on Mr. Scearce's alleged exposure to asbestos-containing products. Plaintiffs filed a First Amended Complaint on July 19, 2012. Raytheon was served that same day.

In the First Amended Complaint, through which Plaintiffs brought claims against more than forty defendants, Plaintiff alleged that "[f]rom approximately 1983 to 2004, Mr. Scearce was exposed to asbestos-containing products while conducting electric repair work at various Air Force base sites, including McGuire Air Force Base in New Jersey. Mr. Scearce was additionally exposed to asbestos from communications equipment being installed and used during the same time period at that location." Compl. ¶5. Plaintiffs asserted claims against each defendant for breach of both express and implied warranties, for marketing and placing an ultra-hazardous product into the stream of commerce, for failure to warn, and for conspiracy to withhold from the public known hazards of asbestos-containing products. Id. at ¶¶ 11-29. Plaintiffs also asserted a loss of consortium claim on behalf of Mr. Scearce's wife. Id. at ¶¶30-32.

Plaintiffs also attempted to disclaim federal jurisdiction by including a provision that stated: "Plaintiffs specifically disclaim any federal cause of action or any claim that would give rise to federal jurisdiction." Compl. at 12. Plaintiffs further stated that to the extent that the claims invoke federal jurisdiction, Plaintiffs' negligence claims were "not based on the theory of defective design, but rather are based only on the theory of failure to warn." Id. at 12. According to Plaintiffs, "[s]ince there is no evidence that the United States Government or any of its military branches, specifically instructed manufacturers from which it purchased asbestos-containing products not to warn about the health hazards associated with exposure to asbestos,

there can be no valid claim to federal jurisdiction pursuant to . . . federal officer of contractor provisions of the United States Code." Id.

On October 19, 2012, Raytheon removed the matter to federal court. Raytheon argued that removal was timely because it only learned that the case was removable during Mr. Scearce's deposition, which occurred on September 21, 24 and 25, 2012. In his deposition, Mr. Scearce revealed that "the only specific Raytheon product about which he complains is the AN/TRC-170, a digital troposcatter radio system." Notice of Removal at 1-2. Raytheon argues that this particular device "was designed and manufactured according to precise specifications set forth by the U.S. Air Force; Raytheon designed and manufactured this equipment, including warnings and instructions, under the direction of federal officers." Notice of Removal at 2. Accordingly, Raytheon invokes the federal officer removal statute.

On November 19, 2012, Plaintiffs timely filed the instant motion to remand. Plaintiffs attack Raytheon's removal on two grounds. Plaintiffs first argue that the Court should remand this matter because the First Amended Complaint clearly alleged that Mr. Scearce was exposed to asbestos through Raytheon's "communications equipment" while he was in the United States Air Force, thus giving adequate notice of federal jurisdiction. Plaintiffs next argue that the Court lacks subject matter jurisdiction because Raytheon has not properly pled federal jurisdiction. Finally, Plaintiffs argue that even if the Court asserts jurisdiction over the claims against Raytheon, the Court must sever and remand the remaining claims pursuant to 28 U.S.C. §1441(c).[1]

---

[1] 28 U.S.C. §1441 states in relevant part: "If a civil action includes a claim arising under the Constitution, laws, or treaties of the United States. . . and a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute," upon removal, the "district court shall sever from the action all claims" that are not within its original or supplemental jurisdiction, and "shall remand the severed claims to the State court from which the action was removed."

## II. LEGAL STANDARD

Raytheon has removed this matter pursuant to 28 U.S.C. §1442, commonly termed the federal officer removal statute. The federal officer removal statute permits removal of a state court action against the "United States or any agency thereof or any officer (or any person acting under that officer) of the United States of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. §1442(a)(1). In order to remove pursuant to the statute, a defendant must show that: 1) it is a "person" within the meaning of the statute; 2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; 3) it raises a colorable federal defense; and 4) there is a causal nexus between the claims and the conduct performed under color of a federal office. Feidt v. Owens Corning Fiberglas Corp., 153 F.3d 124, 127 (3d Cir. 1998). Unlike other removal statutes which the Court must construe strictly in favor of remand, the federal officer removal statute must be construed broadly in order to effectuate Congressional intent that federal officers have access to a federal forum. See In re Asbestos Products Liab. Litig. (No. VI), 770 F. Supp. 2d 736, 741 (E.D. Pa. 2011). Despite this broad construction, it remains axiomatic that the "party asserting jurisdiction bears the burden of showing the action is properly before the federal court." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 219 (2005).

While Section 1442 governs the substantive requirements for federal officer removal, the timeliness of removal is dictated by Section 1446. Section 1446(b) provides: "the notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. §1446(b)(1). If the case, as stated by the initial pleading, does not appear to be removable, "a notice of removal may be filed

within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. §1446(b)(3).[2] In the Third Circuit, district courts must consider "whether the document informs the reader, to a substantial degree of specificity, whether all the elements of federal jurisdiction are present" to determine when the 30 days begins to run under Section 1446.[3] Foster v. Mutual Fire, Marine & Inland Ins. Co., 986 F.2d 48 (3d Cir. 1993), rev'd on other grounds, Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999). Although not jurisdictional, the failure to timely file a notice of removal is grounds for remand. See In re FMC Corporation Packaging Systems Div., 208 F.3d 445 (3d Cir. 2000) (holding that because non-jurisdictional objections to removal may be waived, a district court may not remand *sua sponte* for procedural defects in removal such as untimeliness). As with jurisdiction, the defendant bears the burden of showing the timeliness of

---

[2] There is no dispute that a party's answers to deposition questions can constitute "other paper" for the purposes of the removal statute. See Pl. Br. at 13. Plaintiffs contend instead that Mr. Scearce's deposition testimony was not the triggering event in this particular case. Id.

[3] In Foster v. Mutual Fire, Marine & Inland Ins. Co., the Third Circuit evaluated whether a summons qualified as an "initial pleading" under §1446, thus triggering the 30-day removal period. At the time, district courts within the Circuit had divided into two opposing camps. Some district courts had taken a bright-line approach and held that a summons could never constitute an "initial pleading," whereas others had adopted a subjective test that required the court to delve into both the content of the summons and the defendant's subjective knowledge and other papers such as correspondence. In rejecting both approaches, the Third Circuit found that the bright-line approach conflicted with Congressional intent that removal occur as early as possible. On the other hand, the court found that requiring a court to "delve into the content of potentially large amounts of correspondence to perform subjective evaluation of defendant's knowledge" was similarly inconsistent with the statute. Consequently, the court held that a summons may serve as notice of removability, but only if it contains sufficient information to trigger 1446(b). In so holding, the Third Circuit clarified that "the relevant test is not what the defendants purportedly knew, but what these documents said." The Third Circuit later recognized that the Foster decision had been abrogated by the Supreme Court's decision in Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999), and that a summons alone could not trigger the removal period. See Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 222 (3d Cir. 2005)

Since Foster, some district courts have cited Foster as establishing "that the analysis for determining whether the four corners of the pleading is sufficient is an objective one." In re Asbestos Products Liability Litigation (No. VI), 770 F. Supp. at 740. However, as at least one other district court has noted, the Third Circuit has not yet had occasion to determine the standard for evaluating when the 30-day removal period is triggered under 1446(b)(3). See Bouchard v. CBS Corp., 2012 WL 1344388, *5 (E.D. Pa. 2012) ("The Third Circuit has not reached the issue of what test or standard applies to assess when the second thirty-day window is triggered."). Notwithstanding, the Court will adopt the Foster standard to evaluate timeliness under §1446(b)(3).

removal.  Entrekin v. Fisher Scientific Inc., 146 F. Supp.2d 594 (D.N.J. 2001); see also Schnable

v. Drexel Univ., Civ. A. No. 95-21, 1995 WL 412415, at *3 (E.D. Pa. July 10, 1995).

## III.  DISCUSSION

Plaintiffs contend that the First Amended Complaint clearly provided notice to Raytheon

that the case was removable.  Consequently, Raytheon untimely removed ninety days after

service.  Pl. Br. at 20-21.  According to Plaintiffs, the allegations in the Complaint and Initial

Fact Sheet establish that:

1.  Ronald Scearce was exposed to asbestos-containing products while in the Air Force from
    1983 to 2008;

2.  Raytheon was named as one of the manufacturers, suppliers and distributors of asbestos-
    containing products that Mr. Scearce was exposed to;

3.  Mr. Scearce developed mesothelioma as a direct and proximate result of his exposure to
    Raytheon's asbestos containing products during the 21 years he worked as a "Satellite
    Wideband & Telemetry Technician" for the United States Air Force at "Various sites" [4]

Id. at 5.  Plaintiffs argue that these facts, when coupled with Raytheon's knowledge that it

produced the AN/TRC-170 Digital Troposcatter Radio for the Air Force, were sufficient notice

to Raytheon that the case was removable.  Plaintiffs support their motion by citing to Pantalone

v. Aurora Pump Co., 576 F. Supp.2d 325 (D. Conn. 2008).  In that case, the district court

remanded an asbestos case because the defendant failed to establish that removal could not be

---

[4] In the complaint, Plaintiffs allege that Mr. Scearce was exposed to asbestos-containing products while "conducting electric repair work at various Air Force base sites, including McGuire Air Force Base in New Jersey."  Compl. ¶5. Plaintiffs also allege that "Mr. Scearce was additionally exposed to asbestos from communications equipment being installed and used during the same time period *at that location*."  Id.  The Court agrees with Raytheon that a fair reading of the Complaint limits Mr. Scearce's alleged exposure to communications equipment at McGuire Air Force Base.  However, Raytheon has not demonstrated how this fact is significant.  During his deposition, Mr. Scearce identifies two Air Force bases from which he was deployed between 1992 and 2000.  Notice of Removal Ex. C. When asked if he had identified all the places he worked with TRC-170, Mr. Scearce replied: "Well, there could have been—like I said, we had deployments all over the U.S. and I mean there were plenty of deployments, so I can't tell you every place we went.  I mean, we had designated training grounds when I was at Robins, but we also had other major exercises with other units that we dealt with, so I mean, to go back and try—like I said, I could review my performance reports.  It may have some of that information if you want specific locations and stuff."  Id. at 477.

reasonably ascertained earlier. After submitting their brief, Plaintiffs also alerted the court to a December 2012 decision, in which a district court for the District of Maryland remanded an asbestos case under similar circumstances. See Dilks v. 4520 Corp., Inc., Civil No. WDQ-12-2758, 2012 WL 6625867 (N.D. Md. December 18, 2012).

Raytheon opposes Plaintiffs' request for remand, arguing that neither the allegations of the Complaint, nor the Initial Fact Sheet, provided adequate notice that the action was removable.[5] Raytheon notes that "[s]everal communications systems provided by Raytheon have been utilized by the Air Force. The Air Force has also acquired other Raytheon products, including a network intrusion detection device and laser detecting-ranging-tracking set." Opp'n at 4-5. Additionally, Raytheon emphasizes that the company "has also developed a number of products for civilian use, including microwaves and radio equipment" as well as "a wide range of communications systems, including during the period of the 1980's forward." Id. at 5. Raytheon further argues that the job duties encompassed by the title of "Satellite, Wideband & Telemetry Technician" are "quite broad" and did not assist the company in narrowing the potential products at issue in Plaintiffs' claims. Id. at 8-9. Raytheon contends that given the "vast breadth of Raytheon's operations, Raytheon could not 'reasonably and intelligently' determine from the vague, general Complaint allegations what type of Raytheon product or products might fall within those allegations—let alone the level of military involvement, if any, with such product(s)." Id. at 10.

In support of its argument, Raytheon attempts to distinguish Pantalone and cites to

---

[5] Raytheon challenges the appropriateness of considering the Initial Fact Sheet, arguing that the Court is limited to the "four corners" of the Complaint. Opp'n at 19. Assuming *arguendo* that the Initial Fact Sheet is deemed "other paper" under §1446(b)(3), Raytheon argues that the mere reference to Mr. Scearce having worked as a "Satellite, Wideband & Telemetry Technician" does not significantly narrow the universe of Raytheon products. Id. The Court will consider the Initial Fact Sheet. Even if the Initial Fact Sheet, which is required in asbestos cases filed in New Jersey state court, were not deemed part of the Complaint, it would certainly be considered "other paper" under the statute.

Beamis v. Buffalo Pumps, Inc., C.A. No. 08-472S, 2009 WL 462543 (D.R.I. Feb. 23, 2009) and

In re Asbestos Product Liability Litigation, 770 F. Supp.2d 736 (E.D. Pa. 2011).  In Beamis, the

district court questioned whether the plaintiff's complaint was sufficiently detailed to provide

notice as to the grounds for federal officer removal and trigger the thirty day removal period.

2009 WL at *2.  Guided by the standard that "a plaintiff must provide sufficiently specific facts

or allegations to allow the defendant reasonably to identify the contracts supporting federal

officer removal," the district court determined that the plaintiff's complaint did not trigger the 30

day clock.  Id.  In so holding, the court stated:

> The complaint does not specify the dates of Plaintiff's employment at the shipyard, the
> naval ships on which he worked or the specific GE products he alleges as the source of
> exposure.  Tellingly, Plaintiff argues in his memorandum that 'given the plaintiff's
> employment at a Navy shipyard, GE was well-positioned to ascertain the potential
> applicability of the federal officer theory.'  The standard is not, however, whether a
> defendant is 'well-positioned to ascertain' grounds for removal.  (internal citations
> omitted)

Id.  The district court also distinguished Pantalone, noting that the Pantalone defendant asserted

that all of the pumps it supplied to the Navy were built to military specifications.  In Pantalone,

"[w]hile the removing defendant asserted that it also supplied pumps to private entities, it did not

assert that it supplied other 'off the shelf' or generic products to the Government."  Id. at *3.  In

contrast, the court noted that the Beamis defendant argued that it sold commercial products such

as electric motors and light bulbs to the Government, which would not justify federal officer

removal.  Id.

In In re Asbestos Products Liability Litigation, the district court denied the plaintiff's

motion for remand, finding that the complaint lacked the "substantial degree of specificity

needed to establish the existence of a federal defense." 770 F. Supp. 2d at 740.  Although the

complaint identified a Naval Shipyard as a potential site of exposure and listed the range of years during which the plaintiff had worked at the shipyard, the court found that "[s]imply stating that Decedent was employed at the Long Beach Naval Shipyard is insufficient." Id. Instead, the court stated that "Defendant did not have a basis for removal until the nexus between Plaintiffs' claims and actions allegedly taken by Defendant under the direction of a federal officer was established." Id. The Court found that "[t]he nexus was not revealed until Plaintiffs' Answers to Special Interrogatories stated that, 'Plaintiffs contend that Defendant sold, supplied, marketed, and distributed asbestos containing products to which Decedent was exposed while in the U.S. Navy including Marine and Steam Turbines.'" Id.

Acknowledging the conflicting case law, the Court finds that Raytheon's removal was untimely under Section 1446(b)(3). In an apparent attempt to align this case with Beamis, Raytheon states that it has developed a wide range of products and could not have determined the product upon which Plaintiffs' claims were based. See Opp'n at 17-18. However, a key distinction between this case and Beamis is that the Beamis defendant specifically asserted that it sold "off-the-shelf" products to the Government, which were not custom manufactured to specification and would not justify federal officer removal. Thus, the details provided in the plaintiff's interrogatories were necessary for the defendant to ascertain the grounds for federal officer removal.

Although not raised by either party, the Court also finds instructive the court's decision in Bouchard v. CBS Corp., No. MDL-875, 2012 WL 1344388 (E.D. Pa. April 17, 2012). In that case, the district court found that removal was timely after the defendant, Lockheed Shipbuilding Company, removed upon learning that the ships in question were military ships. The district court noted that "Defendant Lockheed, like other federal military contractors, performs activities

that are protected by federal contractor immunity, and others that are not. Until deposition testimony revealed which ships Mr. Berger had worked on during his employment, Defendant could not assert either that its actions were taken pursuant to a federal officer's directions, or that it had a colorable federal defense." <u>Bouchard</u>, 2012 WL at *7.

Raytheon is correct that the Court must consider "whether the 'four corners' of the Complaint provided a 'substantial degree of specificity' on the removability of the action." Opp'n at 17. Raytheon is also correct that given the breadth of its operations, it could not have intelligently concluded that the AN/TRC-170 was the product in question solely from the allegations of Plaintiffs' First Amended Complaint and Initial Fact Sheet. However, Raytheon has failed to establish why the company needed to know the specific product in order to ascertain removability. Unlike the defendants in <u>Beamis</u> and <u>Bouchard</u>, Raytheon has not stated that it supplied other products to the Air Force that would not have been subject to a federal contractor defense. Raytheon simply argues that Plaintiffs' allegations were not sufficiently detailed. The Court recognizes that Raytheon very well could have provided various products to the Air Force, some of which would not have justified federal officer removal. Nevertheless, it is Raytheon's burden to establish that removal was timely and that it could not have ascertained removability earlier. Raytheon has established that Mr. Scearce's deposition rendered removability uncontestable. "[T]he 30-day clock began ticking, however, when removability was first ascertainable." <u>Dilks</u>, 2012 WL at *4, n.12. Accordingly, Raytheon has not carried its burden of demonstrating the timeliness of removal and this matter will be remanded to the Superior Court of New Jersey, Middlesex County. Because the Court finds that removal was untimely, the Court need not address the remainder of Plaintiffs' arguments.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Remand is GRANTED.  This matter will be remanded the Superior Court of New Jersey, Middlesex County.  An accompanying order shall issue today.

Dated:  _5/16/2013_____                    /s/ Robert B. Kugler
                                              ROBERT B. KUGLER
                                              United States District Judge